UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM WHITE AND YVETTE WHITE,

Plaintiff,

-against-                                                        No. 22 Civ. 07306 (NSR)
                                                                  OPINION & ORDER
WAL-MART STORES EAST, LP and WALMART
INC.

Defendants.

NELSON S. ROMÁN, United States District Judge

      Plaintiffs, William White and Yvette White (the "Plaintiffs") commenced the instant action

in New York State Supreme Court, Orange County, seeking monetary damages against Defendants

Wal-mart Stores East, LP and Walmart Inc. (the "Defendants") after allegedly sustaining personal

injuries while on premises owned and/or controlled by the Defendants. (ECF No. 1, Notice of

Removal and Complaint.) On August 26, 2022, the Defendants removed the action from state court

to this court pursuant to 28 USC § 1332 on the basis of diversity jurisdiction. *Id*. On or about April

of 2023, the parties reached a settlement agreement resolving all claims in the action. (ECF Nos.

16, 18.)   Presently before the Court is Plaintiffs' current counsel, Kathleen Law P.C. ("Kathleen

Law")'s, motion for a court order awarding it ninety percent (90%) of the attorney's fees for legal

services rendered to the Plaintiffs. (ECF Nos. 19, 31, "Memorandum" or "Mem.") Morgan and

Morgan NY PLLC ("Morgan & Morgan"), Plaintiffs' former counsel, oppose the motion and

assert it is entitled to ninety percent (90%) of the attorney's fees. (ECF No. 28, "Opposition" or

"Opp.") For the following reasons, the Court GRANTS Kathleen Law's motion.

**BACKGROUND**

The following facts are taken from the parties' submissions, summarized and undisputed.

In January of 2022 Plaintiffs sustained personal injuries after a slip and fall incident in a Wal-mart store located in Orange County, New York. (ECF No. 31, Mem. ¶ 20.) Later in the month, Plaintiffs retained Morgan & Morgan to represent them in prosecuting their claims against the Defendants. (*Id.* ¶ 19.) The Plaintiffs each signed a contingency fee retainer agreement wherein they agreed that the law firm would be entitled to one-third (1/3) of the proceeds of any recovery obtained for prosecuting the claims, plus reimbursement for any expenses and disbursements. (*See* ECF No. 31, Ex. A.) Morgan & Morgan assigned one of its employees, Kathleen Beatty, Esq. ("Ms. Beatty"), to handle all legal aspects of the cases. (Mem. ¶ 3 & Opposition.)

In January of 2023, following a disagreement with new incoming management at Morgan & Morgan, Ms. Beatty was terminated. (Mem. ¶¶ 30, 31.) In February of 2023, Ms. Beatty opened her own firm, Kathleen Law. (*Id.* ¶ 40.) On February 5th, 2023, Plaintiffs discharged Morgan & Morgan and retained Kathleen Law to continue to prosecute their claims.[1] (*Id.* ¶ 42.) In March of 2023, Kathleen Law reimbursed outgoing counsel, Morgan & Morgan, in full for all expenses incurred ($1,865.84 - $936.75 for William White and $929.09 for Yvette White). (*Id.* ¶ 44.) Upon the cases being transferred from Morgan & Morgan to Kathleen Law, the attorneys executed a stipulation wherein it was agreed that in the event of a resolution of the Plaintiffs' claims, that portion of the amount recovered constituting attorney's fees would be held in escrow until such

---

[1] There is no evidence presented to the Court to conclude Morgan & Morgan were discharged for cause. If the lawyer is discharged without cause and prior to the conclusion of the case, they may recover either (1) in *quantum meruit*, the fair and reasonable value of the services rendered, or (2) a contingent portion of the former client's ultimate recovery, but only if both of the parties have so agreed. *See Lai Ling Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454, 458 (1989).

time as the attorneys could agree on an apportionment, and that if no apportionment could be agreed upon, the matter would be resolved in an appropriate forum. (ECF No. 31, Ex. E.)

In May of 2023, Kathleen Law ultimately reached a settlement totaling $145,000.00 ($75,000 for Yvette White and $70,000 for William White). (Mem. ¶ 49.) Pursuant to the retainer agreement signed by the Plaintiffs, the amount of attorney's fees was $25,000.00 and $23,333.33, respectively. *(Id*. ¶ 50.) Upon receiving the settlement proceeds, Ms. Beatty placed the funds designated as attorney's fees in an escrow account until the attorneys could agree upon a distribution amount. (*Id.*) After several failed attempts at reaching an agreement, Ms. Beatty filed the instant motion seeking to retain ninety percent (90%) of the total attorney's fees obtained in Plaintiffs' cases.

## LEGAL STANDARD

When interpreting a contractual attorney's fee agreement, federal courts apply state law. *Alderman v. Pan Am World Airways,* 169 F.3d 99, 103 (2d Cir. 1999) (internal citations omitted). Generally, contract interpretation principles apply to attorney's fee agreements. (*Id*.) The essential terms of an attorney retainer agreement should be clear and unequivocal. *Shaw v. Manufacturers Hanover Tr. Co.*, 68 N.Y.2d 172, 176 (1986).  An attorney's client should be fully informed of all relevant facts and the basis of the fee charges, especially in contingent fee arrangements. (*Id.)* (internal citations omitted).

It is well established that an agreement between attorneys for division of a legal fee is a valid agreement enforceable in accordance with the terms set forth therein, provided that each party actually contributed work, labor and service toward earning of the fee and "there is no claim that either refused to contribute more substantially." *Alderman v. Pan Am World Airways*, 169 F.3d at 103 (quoting *Benjamin v. Koeppel*, 85 N.Y.2d 549, 556 (1995). When there is a dispute,

however, between current and discharged attorneys in an action where a contingent fee retainer agreement applies, a discharged attorney may choose to receive "compensation immediately based on quantum meruit or on a contingent percentage fee based on his or her proportionate share of the work performed in the whole case." *Llivicura v. 101 West 78th, LLC.*, 214 A.D.3d 862, 863 (2023) (quoting *Wodecki v. Vinogradov*, 125 A.D.3d 645 (2015)).

Generally, the court has discretion in determining the appropriate amount of attorney's fees for each party. *See Ficaro v. Alexander*, 142 A.D.2d 1043, 1044 (2016). In determining the proportionate share of work performed by each attorney, courts consider the amount of time spent by plaintiffs' former and current attorneys on the action, the nature of the work performed, the relative contributions from each attorney, the attorney's skill and experience, their contribution to bringing about the resolution and the amount recovered. *Cruz v. Olympia Trail Bus Co.*, 2005 WL 3071473, *3 (S.D.N.Y. 2005); *Ficaro v Alexander*, 143 A.D.2d at 1043; *Lai Ling Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454, 458 (1989).

## DISCUSSION

It is undisputed that Ms. Beatty was the same attorney on the cases at both firms. Therefore, for the Court's analysis the factors of attorney's skill and experience are equal between Morgan & Morgan and Kathleen Law. (Mem. ¶¶ 19, 42.) Morgan & Morgan was the initial counsel retained by the Plaintiffs and handled the cases for approximately one year. During that time, Wal-Mart denied all liability, and the parties never progressed towards reaching a resolution. (Mem. ¶ 25.) During the year that Morgan & Morgan handled the cases, it purportedly: spoke periodically with the clients; investigated the claims and Defendants; prepared and sent letters of representation to Defendants; gathered medical records from approximately seven providers; prepared, filed and served pleadings; reviewed Defendants' answer and discovery demands; reviewed and executed a

confidentiality order; prepared and served a Bill of Particulars and responses to discovery demands; secured an expert witness to produce life care plans for both plaintiffs; and once the cases were transferred to federal court, prepared and served Rule 26 disclosures as well as effectuated interrogatories and requests for production. (Opp. at p. 3.) While they provide what purports to be an exhaustive list of work performed on the cases, Morgan & Morgan has failed to produce someone with personal knowledge of the facts asserted. Nor do they assert that they are relying on work log when referencing the work they purport to have done. Significantly, they do not provide information concerning the amount of time expended on each task and whether the task was performed by an attorney, a paralegal or an administrative assistant.

Ms. Beatty, however, avers that while employed at Morgan & Morgan she was the only attorney assigned to perform legal work on Plaintiffs' cases. (ECF No. 31, Amend. Memo. at p. 12.) Most of the work performed on the cases was done by non-attorney staff members such as gathering medical records, drafting and serving form documents, and filing documents with the court at her direction. (*Id.* at p. 5.) She estimates that she expended approximately two (2) hours performing legal work on the cases, which included reviewing documents, store surveillance video and corresponding with the Plaintiffs. (*Id.* at p. 12.) The summons and complaint on the cases were filed on June 30, 2022. (*Id.* at p. 11.) Ms. Beatty left the office of Morgan & Morgan six months later, in January of 2023. (*Id.* at p. 13.)

As an attorney and the principal at Kathleen Law, Ms. Beatty performed the "lion share of work on the [Plaintiffs'] cases" (*Id.* at p. 5.) She frequently communicated with her clients, engaged in discovery, negotiated liens, and successfully reached a settlement on both cases through mediation. (*Id.*) In the three months the cases were at Kathleen Law, Ms. Beatty estimates that she

spent twenty and one-half (20.5) hours performing legal work, inclusive of the mediation. (*Id.* at p. 17-19.)

Based on the sworn statements provided, a total of twenty-two (22) hours of attorney work was performed on the cases. Of the twenty-two hours, Morgan & Morgan performed approximately ten percent (10) and Kathleen Law performed ninety (90) percent. While it appears that there was additional non-attorney work performed by paralegals and perhaps administrative assistants, neither party has submitted an itemized list of the work performed with the corresponding time incurred. While the proportionate share of hours spent is relevant, it is not dispositive. *Cruz v. Olympia Trails Bus Co.*, 2005 WL 3071473, *3 (S.D.N.Y. Nov. 14, 2005). Courts additionally may consider "the actual work performed, the difficulty of the questions involved, the skills required to handle the matter, the attorney's skills and experience, and the effectiveness of counsel in bringing the matter to resolution." *Foppiano v. City of New York*, 2002 WL 31202716, *4 (S.D.N.Y. Sept. 25, 2002) (quoting *Buchta v. Union Endicott Cent. Sch. Dist.*, 296 A.D.2d 688, 689-90 (3d Dep't 2002)).

Given the information provided to the Court and the relevant factors, it is the Court's determination that Morgan & Morgan did not perform substantially difficult legal work and did not contribute to the ultimate resolution of the cases. Meeting with clients, serving and filing the summons and complaint, conducting preliminary discovery, serving a bill of particulars and securing an expert witness,[2] were not substantial factors in reaching a settlement. Indeed, while the cases were at Morgan & Morgan, no settlement offers were made. (ECF No. 31, at p. 11.) *Rouen v. Chrysler Credit Corp.*, 565 N.Y.S.2d 25 (2004) (finding that outgoing counsel who commenced the action and served the summons and complaint, filed bill of particulars, represented

---

[2] Morgan & Morgan represents that it "[s]ecured an expert witness to produce life care plans for both clients", no other information was provided.

plaintiffs at depositions, and acquired medical records was entitled only to 15% of contingency fee). In *Buchta v. Union-Endicott Centr. Sch. Distt.*, the plaintiff had three firms represent her in a personal injury action. *Buchta*, 745 N.Y.S.2d at 145. "The first firm conducted an initial investigation and filed a notice of claim; the second firm conducted all discovery and filed a note of issue; the third firm, through its rigorous pursuit of the claim achieved a significant settlement." *Id.* The court concluded that the third firm's work contributed most to the resolution and thus awarded fees of 10, 25 and 65 (10%, 25% and 65%) percent respectively. *Id.* Similar to the third firm in *Buchta*, here, the legal work undertaken by Kathleen Law resulted in a significant settlement. *Buchta*, 745 N.Y.S.2d at 145.  Thus, the Court finds it appropriate to award ninety percent (90%) of the attorney's fees to Kathleen Law and ten percent (10%) to Morgan & Morgan.

## CONCLUSION

Based upon the review of the record, the parties' submission, and in consideration of all of the relevant factors, including the time spent by each firm, the nature of the work performed, and its relative contribution towards the resolution, it is the Court's determination that Kathleen Law is entitled to retain ninety percent (90%) of the attorney's fees and Morgan & Morgan is entitled to ten percent (10%) of the attorney's fees.

The Clerk of Court is further directed to terminate the motion at ECF No.  31.

Dated: August 29, 2024                                          SO ORDERED.
       White Plains, NY

_____
       NELSON S. ROMÁN
    United States District Judge